INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA, UAW

v.

MACK TRUCKS, INC.

International Union, UAW, Appellant.

No. 90–1192.

United States Court of Appeals, Third Circuit.

Argued Aug. 27, 1990.

Decided Oct. 18, 1990.

William T. Josem, Richard H. Markowitz (Argued), Markowitz & Richman, Philadelphia, Pa., for appellant.

Edward T. Ellis (Argued), Montgomery, McCracken, Walker & Rhoads, Philadelphia, Pa., for appellee.

Before HUTCHINSON and NYGAARD, Circuit Judges, and RE, Judge.*

## OPINION OF THE COURT

NYGAARD, Circuit Judge.

In its second appearance before this Court as an appellant in this case, the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, UAW (UAW) appeals the district court's order concluding that Mack did not breach the parties' 1984 Collective Bargaining Agreement and denying the UAW's request for injunctive relief. The UAW challenges this order on three grounds: (1) that the district court was bound by the prior opinion in this case, *International Union, UAW v. Mack Trucks, Inc.*, 820 F.2d 91 (3d Cir.1987), which the UAW asserts held that the contract was breached; (2) that the contract language is unambiguous and required Mack to seek the UAW's approval of the terms and conditions of health insurance coverage before changing health insurance carriers; and (3) even if the contract language is ambiguous, the court's finding is clearly erroneous.[1]

We have jurisdiction over the district court's final judgment pursuant to 28 U.S.C.A. § 1291 (West Supp.1990). The district court had subject matter jurisdiction over this suit pursuant to 28 U.S.C.A. § 1331 (West Supp.1990) since this case arose under § 301 of the Labor–Management Relations Act of 1947, as amended, 29 U.S.C.A. § 185 (West 1978). We will affirm.

## I.

This case involves a dispute over whether Mack could unilaterally change its health insurance carrier from Blue Cross/Blue Shield to Equitable without UAW approval, when the terms and conditions of the substituted coverage remained the same. Before 1984, the Collective Bargaining Agreement between Mack and UAW required that Mack use Blue Cross as its employees' health insurance carrier. By 1984, however, the Blue Cross plan costs had increased significantly, so during the 1984 negotiations, Mack proposed that it be able to unilaterally change carriers. The UAW countered that it would agree only after both parties accepted the terms and conditions of the proposed health insurance coverage.

The UAW's main concern was what the coverage would be, not who provided it. The parties, however, could not agree on the terms and conditions of coverage before the contract expired so they decided on a temporary solution. The UAW made the following proposal:

> The terms and conditions of coverage, including those amendments made in these negotiations, are continued on the assumption that the current provider arrangement with Blue Cross/Blue Shield will continue for the term of the labor agreement. The company shall not exercise its option to select an alternate provider until the parties have reached a mutual agreement on the terms and con-

---

* Honorable Edward D. Re, Chief Judge of the United States Court of International Trade, sitting by designation.

1. The district court also rejected the UAW's request for injunctive relief because the balance of equities favored Mack. The UAW contends that the court considered factors it should not have. Because we will affirm the district court's conclusion that Mack did not breach the contract, we do not reach this issue.

ditions including restrictions, limitations and definitions that would be applicable to any provider other than Blue Cross/Blue Shield.

Mack in turn suggested the following changes: strike "provider" from the first sentence; and change "alternate provider" or "alternate carrier" to "alternate delivery system." The UAW agreed and the provision was changed to read:

> The terms and conditions of coverage, including those amendments made in these negotiations, are continued on the assumption that the current arrangement with Blue Cross/Blue Shield will continue for the term of the labor agreement. The company shall not exercise its option to select an alternate delivery system until the parties have reached mutual agreement on the terms and conditions including restrictions, limitations and definitions that would be applicable to any delivery system other than Blue Cross/Blue Shield.

Later, Mack informed the UAW that it was changing health insurance carriers from Blue Cross to Equitable. Equitable would provide the same benefits in the same manner and under the same terms and conditions as Blue Cross. In January 1986, Mack unilaterally switched carriers.

Meanwhile, the UAW filed this action seeking to preliminarily and permanently enjoin Mack from changing carriers. The UAW later withdrew its motion for preliminary injunction and proceeded to a non-jury trial for a permanent injunction. After the UAW presented its evidence, Mack moved for a directed verdict under Fed.R.Civ.P. 50, asserting that the UAW failed to prove both a breach of contract and irreparable harm.[2] The district court granted the directed verdict, finding that although the UAW had shown that Mack violated the contract, the UAW was not entitled to equitable relief because it failed to show irreparable harm.

The UAW appealed, arguing that it had presented sufficient evidence of harm to overcome Mack's motion for a directed verdict. We reversed, concluding that Mack's breach did harm the UAW and remanded for further proceedings consistent with the opinion. We reasoned that by unilaterally changing health insurance carriers Mack deprived the UAW of a bargaining chip. Nevertheless, we rejected the UAW's request to enter a permanent injunction because the issue came to us from a directed verdict and that "precluded Mack from introducing evidence to counter the union's case." *International Union*, 820 F.2d at 98.

On remand, Mack sought to introduce evidence on the breach of contract issue. Mack wanted to prove that the term "alternative delivery system" was ambiguous and did not mean "carrier" or "provider" as asserted by the UAW. The UAW sought to prevent Mack from introducing this evidence. It argued that our decision on appeal prevented Mack from relitigating the issue. The district court disagreed with the UAW and admitted Mack's evidence.

When trial resumed, the chief spokesperson for Mack on the Joint Subcommittee on Benefits testified that the terms "provider" and "carrier" were changed to "alternate delivery system" because the terms were not synonymous. Mack's spokesperson stated that he wanted the change "to assure that the company would have the option of switching to another insurance carrier, as long as the insurance carrier provided benefits on a fee for service basis and on the same terms and conditions as Blue Cross/Blue Shield." *International Union, UAW v. Mack Trucks, Inc.,* 733 F.Supp. 938, 944 (E.D.Pa.1990). Also, Mack's expert in the field of employee benefits and health care testified that "delivery system" had a special meaning in the health care field—that the term refers to the manner in which health care insurance

---

**2.** Although the district court and the parties referred to Mack's motion as a Rule 50 motion, the trial was non-jury, and the proper motion would have been under Rule 41(b). Rule 50 applies to jury trials; Rule 41(b) applies to non-jury trials. *Lentino v. Fringe Employee Plans, Inc.,* 611 F.2d 474 (3d Cir.1979). But this is of no consequence. When either motion is denied or reversed on appeal, the process is the same—the trial continues.

coverage is provided by, for example, a fee for service system, a health maintenance organization (HMO), or a preferred provider organization (PPO). The UAW did not rebut Mack's evidence of ambiguity, or the meaning of the term "delivery system."

After hearing all the evidence, the district court entered judgment in favor of Mack. The court first held that the language of the contract was ambiguous because it was reasonably susceptible to different meanings. It based its conclusion on the fact that during negotiations, the terms "provider" and "carrier" were changed to "alternate delivery system" and that, therefore, the term "alternate delivery system" could not mean the same as "carrier" or "provider" as argued by the UAW. The district court next found that the parties intended the term to mean that Mack could unilaterally change the health insurance carrier so long as the new carrier provided benefits in the same manner and extent as the old carrier. The court found the testimony of Mack's witnesses to be credible. The court also noted that the UAW failed to contest this testimony on rebuttal.

## II.

The first issue is whether the district court erred by permitting Mack to assert and present evidence on remand that it did not breach the contract. The UAW claims Mack is barred from challenging the breach of contract finding the district court made in its directed verdict because Mack did not challenge that finding on appeal, and the Court of Appeals stated in its opinion that Mack's actions violated the contract. These issues are essentially legal and require that we interpret the rules of civil procedure. Therefore, our review is plenary. *Dent v. Cunningham,* 786 F.2d 173, 175 (3d Cir.1986).

Both UAW contentions disregard the procedural posture of the appeal. Under Fed.R.Civ.P. 41(b) Mack retained the right to present evidence if the court of appeals reversed. *Federal Deposit Ins. Corp. v. Mason,* 115 F.2d 548 (3d Cir.1940). In *Federal Deposit,* we held that a defen-

dant in a non-jury trial who, pursuant to Rule 50, is granted a directed verdict subsequently reversed on appeal, shall upon remand be afforded an opportunity to present evidence as if the verdict had been denied by the district court. 115 F.2d at 552.

Statements in our opinion in UAW's first appeal in this case do not prevent Mack from presenting its "no breach" argument on remand. We said:

> Mack appears to concede that it (in the district court's words) "breached the collective bargaining agreement by changing its health insurance carrier from Blue Cross/Blue Shield to Equitable without the consent of the UAW." Slip op. at 9. We, therefore, find it beyond dispute that Mack indeed violated its contract ... We need only to decide the legal question of whether the Union adduced evidence of harm sufficient to make out a *prima facie* case and, therefore, to avoid a directed verdict.

*International Union,* 820 F.2d at 95.

The UAW rests its argument on this language, but fails to take our concluding paragraph into account:

> We conclude that the district court erred in granting Mack's motion for a directed verdict and, therefore, will vacate its judgment. The Union came forward with proof that Mack's decision to change unilaterally the health insurance carrier violated the collective bargaining agreement and caused the Union substantial harm by depriving it of a bargaining chip which the Union might trade for other Mack benefits.... However, we will not (as the UAW requests) order the district court presently to grant [a permanent injunction], since the directed verdict precluded Mack from introducing evidence to counter the Union's case. Accordingly, we will remand this case for further proceedings.

*Id.* at 98.

In this concluding paragraph we recognized that Mack retained the right to present its case following its motion for a directed verdict. Under both Rule 50 and

Rule 41(b), a defendant moving for a directed verdict retains the right to present evidence against the plaintiff's case whether its motion is denied at the trial or appellate level. We said this before in *Federal Deposit, supra,* and we reaffirm it today. We conclude that Mack is not attempting to relitigate an issue disposed of by this Court's prior opinion in this case. *See Bankers Trust Co. v. Bethlehem Steel Corp.,* 761 F.2d 943, 950 (3d Cir.1985) ("upon a reversal and remand for further consistent proceedings, the case goes back to the trial court and there stands for a new determination of the issues presented as though they had not been determined before, pursuant to the principles of law enunciated in the appellate opinion, which must be taken as the law of the case.")

### III.

■ The second issue presented by this appeal is whether the district court properly found the language of the agreement to be ambiguous. Determining whether contract terms are clear or ambiguous is a question of law requiring plenary review. *Kroblin Refrigerated Xpress, Inc. v. Pitterich,* 805 F.2d 96, 101 (3d Cir. 1986). While our interpretation of a collective bargaining agreement is governed by substantive federal law, traditional rules of contractual interpretation apply where not inconsistent with federal labor policies. *H.C. Lawton, Jr., Inc. v. Truck Drivers, Chauffeurs,* 755 F.2d 324, 328–29, n. 3 (3d Cir.1985).

> Ambiguity is:
>
> Intellectual uncertainty; ... the condition of admitting of two or more meanings, of being understood in more than one way, or referring to two or more things at the same time ...

*Mellon Bank N.A. v. Aetna Business Credit,* 619 F.2d 1001, 1011 (3d Cir.1980), citing Webster's Third New International Dictionary (unabr.1971). "In making the ambiguity determination, a court must consider the words of the agreement, alternative meanings suggested by counsel, and extrinsic evidence offered in support of those meanings." *Kroblin,* 805 F.2d at 101. "If a reasonable alternative interpretation is suggested ... objective evidence in support of that interpretation should be considered by the factfinder." *Mellon Bank,* 619 F.2d at 1011. It is for the trial judge to "hear the proffer of the parties and determine if there is objective indicia that, from the linguistic reference point of the parties, the terms of the contract are susceptible of different meanings." *Mellon Bank,* 619 F.2d at 1011. These propositions are not inconsistent with federal labor policy.

■ The parties each advanced different meanings for the term "alternative delivery system." The Union makes a textual argument by looking at the contract language alone. It contends that the term "delivery system" is synonymous with the term "carrier." The Union offered no evidence to support its interpretation of the term.

Mack contends that the term "delivery system" means "a system or manner of delivering health insurance benefits as opposed to the organization or company that provides those benefits." *International Union,* 733 F.Supp. at 947. Mack offered into evidence the testimony of its chief spokesperson who was present at the critical meeting on November 1, 1984 when the term "delivery system" was actually inserted into the contract. He gave examples of alternative delivery systems and explained why the terms "provider," "carrier," and "alternative delivery systems" are not synonymous. He testified that Mack suggested replacing the term "provider" with "delivery system" because it wanted to make sure that the language in the contract would permit the company to change insurance carriers so long as the new carrier delivered the group health benefits on a free-for-service system and provided the same terms and conditions of coverage as Blue Cross/Blue Shield.

The district court concluded that the term "alternative delivery system" was ambiguous because it was susceptible of different meanings. We believe the district court advanced sufficient factors to support its holding. In making its determination, the district court reviewed the circum-

stances of the negotiations which led the parties to insert this language. The district court scrutinized the language proposed by Mack, the reasons for the language, and why it was inserted into the contract. It examined all extrinsic evidence proffered. We find nothing to suggest that this term is capable of only one meaning and, therefore, we conclude the district court did not err in finding the term to be ambiguous.

## IV.

■ Finally, we must decide whether the district court's factual finding as to what the parties meant by this phrase is clearly erroneous. *Ram Construction Co., Inc. v. American States Ins. Co.,* 749 F.2d 1049, 1053 (3d Cir.1984).

The district court first considered "extrinsic evidence to ascertain the intent of the parties when they adopted and approved Article I, Section 2 of Appendix B of the 1984 Master Collective Bargaining Agreement." App. 225. Mack was the only party to present any extrinsic evidence as to just what took place at the critical negotiation meeting over the phrase "alternative delivery system." The UAW presented no evidence as to what took place at this meeting and instead chose to rely on what the district court characterized as a "textual argument that the plain meaning of the words show that a delivery system is an insurance carrier." App. 226. Upon this evidence the court interpreted "alternative delivery system" to mean "a delivery system other than the traditional fee-for-service system." App. 227. We find no error. The interpretation offered by Mack and found by the district court is the only one supported by the evidence.

The district court concluded that Mack did not breach its agreement with the UAW. We agree. The court's interpretation of the contract would properly allow Mack to unilaterally change from Blue Cross to another fee-for-service health insurance carrier so long as the new carrier's insurance plan contained the same terms and conditions as the Blue Cross plan. The

Equitable plan meets this test. We will affirm.